UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VISTA FOOD EXCHANGE, INC.,

Plaintiff,

v.

COMERCIAL DE ALIMENTOS SANCHEZ
S DE R L DE C.V. d/b/a COMERCIAL
SANCHEZ,

Defendant.

No. 18-CV-8999 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Vista Food Exchange, Inc. ("Vista"), a wholesale meat supplier, commenced this action against Defendant Comercial De Alimentos Sanchez S de RL de C.V. ("Sanchez"), one of its former customers, asserting both contractual and quasi-contractual claims. Vista alleges that Sanchez failed to pay for over $750,000 worth of meat products it purchased from Vista in 2014. Now before the Court are Vista and Sanchez's cross-motions for summary judgment. For the following reasons, Vista's motion for summary judgment is denied, while Sanchez's motion is granted.

## BACKGROUND

The following facts, which are drawn from the parties' Rule 56.1 statements and the declarations and exhibits submitted in connection with their summary judgment motions, are undisputed unless otherwise noted.[1]

---

[1] Legal arguments and unsubstantiated assertions of fact are impermissible in Rule 56.1 statements and will thus be disregarded. *See Simmons v. Woodcrest Ctr. for Human Dev., Inc.*, No. 10-CV-5193 (JSR), 2011 WL 855942, at *1 n.1 (S.D.N.Y. Mar. 9, 2011) (disregarding Rule 56.1 statement consisting of legal conclusions and "gross distortions of the summary judgment record"); *Am Gen. Life Ins. Co. v. Diana Spira 2005 Irrevocable Life Ins. Trust*, No. 08–CV–6843, 2014 WL 6694502, at *1 (S.D.N.Y. Nov. 25, 2014) (granting motion to strike from Rule

## I.     Factual Background

Vista is a Bronx-based wholesale supplier of fresh and frozen meat products.  Pl.'s 56.1
Stmt. ¶¶ 1-2.  It sells its products primarily to customers in the food industry.  *Id.*  Sanchez, a
Tijuana-based merchant that resells meat products to local restaurants, markets, and butchers,
was one such customer.  *Id.* ¶ 3, Def.'s 56.1 Stmt. ¶¶ 1-2.  Sanchez began purchasing from Vista
on or around July 14, 2011, when it submitted an application to Vista to open a credit account.
Pl.'s 56.1 Stmt. ¶ 4, Def.'s 56.1 Stmt. ¶ 10.  Over the ensuing years, Sanchez made over $5
million in wholesale food purchases from Vista.  First Butterfass Decl. ¶ 7.

Throughout the course of the parties' relationship, Sanchez would place its orders
through Eduardo Andujo Rascón, the Vista sales representative responsible for the Sanchez
account, who worked out of Vista's New Hampshire corporate office.  First Butterfass Decl. ¶¶
8, 14, Pl.'s 56.1 Stmt. ¶ 6.  Sanchez would also negotiate prices and product quantities with Vista
through Rascón.  First Fernando Decl. ¶¶ 17-18.  Indeed, all communications between Sanchez
and Vista took place through Rascón.  *Id.* ¶ 51.  Additionally, Rascón visited Sanchez's facilities
in Mexico many times.  *Id.* ¶¶ 17-18.

Payment invoices would be generated by Vista's corporate office in New York and then
transmitted to customers.  First Butterfass Decl. ¶¶ 8, 11.  The invoices sent by Vista uniformly
specified that all payments should be remitted to Vista's corporate office at the Hunts Point
Market in the Bronx.  Second Butterfass Decl. ¶ 12, *see generally* Second Butterfass Decl. Ex. 2.

---

56.1 submission argumentative statements and purported factual statements unsupported by any citation to the
record).  This principle applies equally to a party's own affirmative assertions of fact and its denials of the opposing
party's assertions.  *See Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07 CIV. 8828 ER, 2013 WL
3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) ("[L]itigants in this District are required by our Local Rules to
specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such
fact, to support its position by citing to admissible evidence in the record.").  "If the opposing party . . . fails to
controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."
*Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

Beginning in 2011, Sanchez would routinely send periodic payments to Vista by wiring money to Vista's bank account in New York.  Second Butterfass Decl. ¶ 13, Second Butterfass Decl. Ex. 3 (examples of wire transfer receipts).

The parties' business relationship soured when, sometime in 2015, Vista suspended Sanchez's account for non-payment.  First Butterfass Decl. ¶ 10.  Sanchez received a phone call from Fred Hast, Rascón's supervisor in the New Hampshire office, who notified Sanchez that it had exceeded its credit limit and that it had a substantial unpaid balance on its account.  First Fernando Decl. ¶ 57.  On March 19, 2015, Hast traveled to Tijuana to meet with Fernando and Humberto Sanchez Hernandez, co-owners of Sanchez, in-person at their office to discuss 39 allegedly unpaid invoices for purchases made between January and November 2014.  Def.'s 56.1 Stmt. ¶ 55.  At this meeting, Fernando and Humberto informed Hast that Sanchez had paid the 39 invoices in question to Rascón in cash,[2] and that they were unaware he had not remitted those payments back to Vista.  *Id.* ¶¶ 56-57; First Fernando Decl. ¶ 68.  They claimed that Rascón had informed them that Vista had authorized him to accept cash payments.  *Id.* ¶¶ 28-29.  Vista, for its part, maintains that it never authorized Sanchez to make cash payments to Rascón.  Third Butterfass Decl. ¶ 16.

Hast then called Vincent Pacifico, President and Chairman of Vista, from the meeting. Pacifico Decl. ¶¶ 1, 4.  Pacifico spoke with Humberto, who insisted that Sanchez had already paid for all of its purchases to date in full.  *Id.* ¶ 4.  Pacifico responded by requesting that Sanchez send documentation of its payments to him for his review.  *Id.*  Rascón did not attend that meeting, nor did he pick up the phone when Hast and Humberto called to speak with him.

---

[2] Vista denies being told at this meeting that Sanchez had made cash payments to Rascón; rather, it contends that Sanchez only stated that all the invoices had been paid without specifying how it made those payments.  Pacifico Decl. ¶ 4.

Def.'s 56.1 Stmt. ¶¶ 55-56, 58.  After the meeting, Hast and Humberto went to Rascón's home, but his wife informed them that he was not there.  *Id.* ¶ 58, First Humberto Decl. ¶ 17.

On March 24, 2015, Pacifico fired Rascón for "admitted theft."  Pacifico Decl. ¶ 8; First Fernando Decl. Ex. D (termination letter).  Pacifico asserts that at the time, he had no knowledge that Sanchez had ever paid Rascón in cash; rather, the "admitted theft" referred to another incident involving a different customer.  Pacifico Decl. ¶¶ 8-10.  On the basis of that incident and in accordance with the company's "zero-tolerance" policy, Pacifico terminated Rascón's employment.  *Id.* ¶ 10.

Also on March 24, 2015, Humberto sent an email to Hast, attaching 39 invoices purportedly signed by Rascón as proof that Sanchez had paid the invoices to Rascón in cash.[3] Def.'s 56.1 Stmt. ¶ 59; *see* Tobia Decl. Ex. M.  The next day, Hast confirmed receipt of that email.  Tobia Decl. Ex. M.  A few days later, on March 30, 2015, Hast sent another email to Humberto, notifying him that Sanchez's account was "under review" and would be placed on hold pending such review.  *Id.*  On May 14, 2015, Humberto sent Pacifico yet another email, this time attaching an Excel spreadsheet that showed Sanchez's internal accounting of the $750,842.00 it claims to have paid in cash to Rascón.  Pacifico Decl. ¶¶ 5-7; *see* First Butterfass Decl. Ex. 2.  No other documents were attached.  First Butterfass Decl. ¶ 12.  In the same email, Humberto requested to meet with Pacifico in order to "find a solution . . . to the bad situation that Mr. Eduardo Andujo left to both of us" and reiterated his view that Sanchez "[did] not have any debt or due payment with Vista."  First Butterfass Decl. Ex. 2.  A few days later, Vista terminated its business relationship with Sanchez.  First Fernando Decl. ¶ 76.

---

[3] Vista objects to this statement on the basis that the signed invoices were not attached to the email that was produced by Sanchez during discovery.

Rascón passed away some time in 2016.  *See* First Fernando Decl. Ex. I.  The circumstances surrounding his death, which the Court need not address here, are disputed by the parties.

## II.   Procedural History

On February 26, 2018, Vista brought a lawsuit against Sanchez in California state court to recover the unpaid bills.  *See* First Fernando Decl. Ex. F.  About a month later, Kurt Hallock—Sanchez's attorney in the California action—provided Vista's counsel with a signed and notarized statement made by Rascón prior to his death.  Def.'s 56.1 Stmt. ¶¶ 65, 72.  The affidavit was dated March 25, 2015.  In it, Rascón declared under oath "as a sales representative of [Vista]" that he had "received the payment in cash of 39 invoices from [Sanchez]."  First Fernando Decl. Ex. C (original), Tobia Decl. Ex. J (certified English translation).  Additionally, 39 commercial invoices, each marked as "paid and received" and signed and dated by Rascón, were attached to the affidavit.  *See* First Fernando Decl. Ex. C.  The California action was dismissed on April 27, 2018.  Def.'s 56.1 Stmt. ¶ 74.

Vista then filed the instant action on October 2, 2018.  *Id.* ¶ 75.  The case was reassigned to this Court from Judge Batts on February 20, 2020.

## LEGAL STANDARD

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).[4]  And a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists.  *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.*  In doing so, it "must provide more than conclusory allegations . . . and show more than some metaphysical doubt as to the material facts."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010).  "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines, Inc.*, 320 F.3d 362, 371 (2d Cir. 2003).

The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).  It will grant summary judgment only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).  When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration.  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

---

[4] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

**DISCUSSION**

## I.   Motion to Strike

As an initial matter, in its opposition to Sanchez's motion for summary judgment, Vista moves to strike the following categories of evidence offered by Sanchez: documents produced by Sanchez after the end date of discovery; the declarations of two witnesses—Argelia Lizárraga Beltrán and Omar Torres Sortillon—who Vista claims were not timely disclosed as witnesses; the declaration of Humberto Sanchez on the grounds that he has "not shown that he is competent to make a [d]eclaration in English," Vista Opp. at 7; and Rascón's affidavit and its accompanying attachments on the grounds that they constitute inadmissible hearsay.  Vista cites no case law in support of its motion to strike and does not specify which Federal Rule of Civil Procedure or local rule supplies the basis for its arguments.

"Because a decision on the motion to strike may affect [the movant's] ability to prevail on summary judgment, it is appropriate to consider a motion to strike prior to a motion for summary judgment." *Pugliese v. Verizon N.Y., Inc.*, No. 05-CV-4005 (KMK), 2008 WL 2882092, at *5 (S.D.N.Y. July 10, 2008).  Accordingly, the Court first addresses Vista's motion to strike before turning to the parties' cross-motions for summary judgment.

### A.  Untimely Disclosures

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to provide, among other things, "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Parties must also provide "the name . . . of each individual likely to have discoverable information . . . that the disclosing

party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i).

"Several provisions of the Federal Rules of Civil Procedure authorize a court to impose sanctions for untimely, incomplete, or misleading responses during discovery." *Markey v. Lapolla Indus. Inc.*, No. 12–CV–4622, 2015 WL 5027522, at \*16 (E.D.N.Y. Aug. 25, 2015).  As relevant here, Rule 37(c) provides in part that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  "Where . . . the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).  Courts have cautioned, however, that preclusion of evidence is a "harsh remed[y]" that "should be imposed only in rare situations." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).  Ultimately, "[w]hether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Pharmacy, Inc. v. Amer. Pharm. Partners, Inc.*, No. 05–CV–776 (DRH)(AKT), 2007 WL 2728898, at \*1 (E.D.N.Y. Sept. 14, 2007).

As to the documents and witnesses allegedly disclosed after the close of discovery, the Court denies the motion to strike.  In determining whether evidence should be excluded pursuant to Rule 37, courts consider the following factors: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Design Strategy, Inc. v. Davis*,

469 F.3d 284, 296 (2d Cir. 2006).  In addition, although a finding of bad faith is not required to justify preclusion of evidence under Rule 37, a court may consider bad faith in its analysis.  *See id.*

These factors, on balance, weigh against preclusion.  First, Vista has not demonstrated that Sanchez's disclosure failure was not harmless.  An omission or delay in disclosure is harmless where there is "an absence of prejudice" to the offended party.  *Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. Feb. 15, 2012).  Vista contends that "[t]he only documents formally produced by Sanchez in this case consisted of 61 pages . . . that Sanchez did not provide until March 29, 2021"[5]—fourteen days after the close of discovery on March 15, 2021.  Vista Opp. at 4.  Approximately half of these 61 pages are made up of the signed commercial invoices attached to Rascón's affidavit, all of which were sent to Vista's attorney in the California action in March of 2018.  Def.'s 56.1 Stmt. ¶ 72.  The other half consists of internal "cash requests" and "cash vouchers" that correspond to those invoices, which document Sanchez's process of retrieving cash from the company's treasury.  Although Sanchez offers no explanation for its failure to timely produce these documents, the Court is of the view that a two-week delay is insufficient to have caused Vista to suffer prejudice, especially given that Vista has had many of these documents in its possession since 2018.  *Cf. Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16-CIV-1267, 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018) (granting motion to strike evidence that was produced "eight months

---

[5] Vista actually states that Sanchez provided these documents on March 20, 2021, but elsewhere in its opposition, it asserts that the documents were produced on March 29, 2021.  *Compare* Vista Opp. at 1 ("They were only produced to Vista on March 29, 2021, after discovery had closed.") *with id.* at 4. ("Sanchez did not provide [the documents] until March 20, 2021, until after the end date for all discovery had passed.").  The Court thus assumes that the March 20 reference was the result of a typographical error.

after the close of fact discovery and two months after the exchange of Local Rule 56.1 Statements," which "deprive[d] Defendant of the ability to investigate or rebut the evidence").

The documents are also central to the dispute surrounding whether Sanchez actually paid the invoices at issue—the "focal point" of this litigation—which counsels against preclusion. *See Collins v. Travers Fine Jewels Inc.*, No. 16-CV-03780 (SN), 2018 WL 1470590, at *2 (S.D.N.Y. Mar. 23, 2018). So too does the fact that Vista did not timely move to extend the discovery deadline or reopen discovery after the belated disclosures but prior to filing its motion for summary judgment. *See Engineered Arresting Sys. Corp. v. M/V SAUDI HOFUF*, 46 F. Supp. 3d 302, 308 (S.D.N.Y. 2014) (declining to exclude the declaration of an expert witness who was not properly disclosed where "[the plaintiff] had sufficient opportunity to request a deposition, submit a rebuttal declaration, or request additional time for such discovery, but it failed to do so at any time prior to submitting its summary judgment opposition papers"); *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09 CIV 9687 JMF, 2013 WL 1499417, at *7 (S.D.N.Y. Apr. 10, 2013) ("Plaintiffs were given generous time to conduct discovery . . . If Plaintiffs believed that Carver's discovery responses were insufficient, they could have addressed these matters with the Court in a timely manner, which they failed to do.").

The analysis is the same with respect to the witness declarations, which contain highly probative evidence on the issue of payment—the central dispute in this case. Moreover, the disclosure failure was harmless because the two declarants' testimony is duplicative of evidence already in the record. *See Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171, 177 (S.D.N.Y. 2013) (finding preclusion not warranted for failure to disclose the identities of three affiants, where their affirmations were largely duplicative of other evidence in the record).

In light of the principle that preclusion is a "harsh remedy" that should be exercised sparingly, as well as courts' "preference to have issues and claims decided on their merits, rather than on the basis of a procedural shortcoming," *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d 197, 247 (N.D.N.Y. 2004), the Court finds preclusion to be unwarranted here.

### B.  Humberto Sanchez Declaration

Vista next moves to strike Humberto Sanchez's declaration on the basis that he has not "shown that he is competent to make a [d]eclaration in English," in light of "his admission [that] he does not speak English." Vista Opp. at 7.  Humberto has, however, attested that the certified English translation of his declaration is accurate, Second Humberto Decl. ¶ 5, and the Court has no reason to doubt that attestation.  The mere fact that a declaration has been translated into English does not render it improper.  *See Mattis v. Zheng*, No. 05 CIV. 2924 (DC), 2006 WL 3155843, at *1 n.1 (S.D.N.Y. Oct. 27, 2006) (denying a motion to strike on the same grounds); *see also Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) (relying on the English-language declaration of a Spanish speaker, despite lack of an accompanying Spanish-language declaration, because the declarant submitted a separate declaration swearing that the first declaration had been translated for him).

### C.  Rascón Affidavit

Lastly, Vista contends that Rascón's affidavit, as well as the signed invoices attached to it, constitute inadmissible hearsay.  Sanchez responds that the evidence is admissible as an opposing party's statement and a declaration against interest.  Sanchez Reply at 5 n.4.  "Whether or not a motion to strike is filed, '[o]n a motion for summary judgment, a district court may rely only on material that would be admissible at trial.'"  *Seife v. Food & Drug Admin.*, No. 17 Civ. 3960 (JMF), 2019 WL 1382724, at *1 (S.D.N.Y. Mar. 27, 2019) (quoting *Rubens v. Mason*, 387

F.3d 183, 189 (2d Cir. 2004)).  The Court agrees with Sanchez that the invoices constitute non-hearsay statements of a party opponent and Rascón's affidavit a declaration against interest; it thus denies the motion to strike them.

The hearsay exclusion for opposing party statements under Rule 801(d)(2) of the Federal Rules of Evidence only applies when the statement is, among other things, made by the opposing party itself or "[its] agent or employee on a matter within the scope of that relationship and *while it existed*."  Fed. R. Evid. 801(d)(2)(A), (D) (emphasis added).  Rascón's affidavit is dated March 25, 2015—one day after his employment with Vista was terminated on account of his "admitted theft."  Thus, at the time the affidavit was prepared, he was no longer an agent or employee of Vista, and was not authorized to speak on its behalf.  The invoices, by contrast, were all marked as "paid" and signed by Rascón at a time when he was still employed by Vista.  The statements were also made within the scope of that employment relationship, as it is undisputed that Rascón was the sales agent responsible for the Sanchez account and all Sanchez-Vista communications took place through him.  *See* First Fernando Decl. ¶ 51.  They are therefore admissible as the statements of an opposing party.

Rule 804(b) permits the admission of a statement by an "unavailable" witness, where the statement is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency . . . to expose the declarant to civil or criminal liability."  Fed. R. Evid. 804(b)(3)(A).  "The proffered statement 'need not have been sufficient, standing alone, to convict the declarant of any crime,' so long as it would have been 'probative' in a criminal case against him."  *United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (quoting *United States v. Persico*, 645 F.3d 85, 102 (2d Cir. 2011)).  An objective standard

governs whether a statement is truly against interest, *see Pacelli v. Nassau County Police Dep't*, 639 F. Supp. 1382, 1387 (E.D.N.Y. 1986), and whether a challenged statement is sufficiently self-inculpatory can only be answered by viewing it in context, *see U.S. v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007).  First, there is no doubt that Rascón's death renders him "unavailable" within the meaning of Rule 804(a)(4).  Second, the Court is persuaded that Rascón's admission that he had "received the payment in cash of 39 invoices from [Sanchez]" was sufficiently damaging so as to fall within the ambit of this exception.  By March 25, 2015, Sanchez had already been made aware that the hundreds of thousands of dollars in cash it had paid to Rascón in satisfaction of Vista's invoices had not, in fact, made their way back to Vista.  Although Rascón did not go so far as to admit to stealing the cash payments in his affidavit, his admission that he had taken the cash could have exposed him to civil or criminal liability for theft; at the very least, such an admission would have been "probative" in a case against him.  The affidavit is thus admissible as a statement against interest.

Accordingly, Vista's motion to strike is denied as to all of the evidence it seeks to exclude.  The Court notes, however, that even if these motions to strike were granted in whole or in part, such ruling would not have impacted the Court's overall determination on the parties' motions for summary judgment because Fernando Sanchez's declaration provides an "independent and undisputed evidentiary basis" to grant summary judgment to Sanchez.  *See Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 707-08 (S.D.N.Y. 2016).

## II.    Motion for Summary Judgment

Both parties have moved for summary judgment on the breach of contract claim.

## A.  Breach of Contract

To recover on a claim for breach of contract under New York law, "a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).  "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002).  In the instant case, the parties do not dispute that they entered into an enforceable contract, and that Vista fully performed its obligations under the contract by fulfilling Sanchez's orders for wholesale meat products.  The primary dispute is over whether Sanchez breached the contract, and if so, whether Sanchez's breach caused Vista's damages.

Visa offers two theories of breach.  It alleges, first, that Sanchez breached the parties' agreement by failing to pay the 39 invoices at issue.  Sanchez, by contrast, insists that it paid each of the disputed invoices in cash to Vista's sales agent, Rascón, without knowledge that Rascón had not in turn remitted the money back to his employer.  Def.'s 56.1 Stmt. ¶¶ 19-52, 79.  This contention is supported by the declaration submitted by Fernando Sanchez, a co-owner of Comercial Sanchez and the individual responsible for placing requests for cash with the company's accounts payable department.  *See* First Fernando Decl. ¶¶ 53, 91 ("Comercial Sanchez utilized a reliable method of cash to pay certain Vista invoices from July 2013 through January 2014, which were made to Rascón . . . Comercial Sanchez continued this cash payment method for [the disputed invoices] from January 2014 through November 2014 . . . Comercial Sanchez did not know that Rascón had stopped remitting these payments to his company, Vista.").  It is further supported by the declaration of Humberto Sanchez, who attested to physically delivering to Rascón large sums of cash on seven occasions—amounting to

approximately $160,000 in total—at Sanchez's corporate office or at his home.  *See* First Humberto Decl. ¶¶ 8-14.  Argelia Beltrán, a Sanchez employee who has worked for the company for over 10 years, similarly stated in her declaration that she personally paid Rascón over $200,000 in cash across five separate deliveries in 2013 and 2014.  First Beltrán Decl. ¶¶ 2-8.  And Omar Sortillon, a "third party provider of import services" whom Sanchez hired to help with the processing of import documentation, similarly asserted in his declaration that he witnessed Rascón collect cash payments from Sanchez at the company's office in Tijuana.  First Sortillon Decl. ¶¶ 2, 5-7.  Additionally, attached as exhibits to Fernando's declaration are copies of "cash requests" and "cash vouchers"—described as "internally issued papers for the handling of cash found in the company's treasury," First Fernando Decl. ¶ 52, which correspond to the disputed invoices and which are signed by Fernando, Humberto, or Beltrán.  Finally, Sanchez's assertion that it paid the invoices is further bolstered, of course, by Rascón's admission under oath that he received cash payment from Sanchez in satisfaction of the 39 disputed invoices, and by Rascón's signature on said invoices.[6]

Critically, Vista does not offer any evidence of its own to contradict Sanchez's assertion that it "has paid in full all 39 invoices at issue in this lawsuit," Def.'s 56.1 Stmt. ¶ 79.  It does not claim that Sanchez did not actually pay Rascón, that Rascón was not an agent of Vista, that Sanchez was aware of Rascón's alleged theft, or that Rascón did not steal the cash.  Instead, it disputes the assertion on the grounds that "Sanchez claims to have paid the invoices in full to someone else who is deceased" and "[Sanchez] alleges that it gave money to Rascon but waited until he died to bring forward its supposed backup documentation."  Pl.'s 56.1 Resp. ¶ 79.  But in

---

[6] As the Court has already noted, its decision on the parties' cross-motions for summary judgment would remain unchanged even if it were to find that Rascón's affidavit and the signed invoices were inadmissible hearsay, in light of the substantial amount of other—uncontested—evidence in the record supporting the fact of Sanchez's payment.

order to survive summary judgment, a party must do more than show some "metaphysical doubt as to the material facts," *Gorzynski*, 596 F.3d at 101, or rely on "conclusory allegations or unsubstantiated speculation," *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). Rather, it must come forward with "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Here, Vista has not done so.  Accordingly, it has failed to create a genuine issue of material fact as to whether Sanchez paid the 39 invoices.

Vista's second theory of breach is that Sanchez violated the "written terms of sale" on its invoices by paying them in cash in Tijuana, instead of tendering payment to Vista's New York office.  The relevant contract language states: "PLEASE REMIT TO: B-101 CENTER ARCADE, HUNTS POINT CO-OP MARKET, BRONX, NY 10474."  *See* Second Butterfass Decl. Ex. 2 (examples of invoices sent by Vista to Sanchez).  The issue with Vista's argument here is that even accepting, for the sake of argument, Vista's interpretation of the contract as requiring payment to be tendered physically in New York, all it has managed to establish is that Sanchez breached the terms of the parties' contract by paying Rascón in Tijuana.  It has failed nonetheless, however, to show that Sanchez's breach caused its damages.

"In New York, 'the law awards damages for breach of contract to compensate for injury caused by the breach.'"  *Faden Bayes Corp. v. Ford Motor Co.*, 1997 WL 426100, at *2 (S.D.N.Y. July 30, 1997) (quoting *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 382 (N.Y. Ct. App. 1974)).  "One who violates his contract with another is liable for all the direct and proximate damages which result from the violation."  *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N.Y. 205, 209 (N.Y. Ct. App. 1886); *see also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 2005 WL 832050, at *4 (S.D.N.Y. 2005) ("In both tort and contract law, causation is an essential element of damages and a plaintiff must prove that a defendant's breach directly and

proximately caused his or her damages.").  Consistent with this principle, only damages that "actually follow or may follow from the breach of the contract" may be awarded; if they "may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes . . . then they cannot be allowed."  *Wakeman*, 101 N.Y. at 209; *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (N.Y. Ct. App. 1986) (same); *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 731 (2d Cir. 1992) ("A plaintiff seeking damages for breach of contract . . . must demonstrate that the damages were caused by and are directly traceable to the defendant's breach.") (internal quotation omitted).

Ordinarily, "[w]here different reasonable and legally sufficient inferences of proximate cause are possible, the question is for the jury."  *Shop Vac Corp. v. BCL Magnetics Ltd.*, No. 04-CV-262, 2005 WL 2739161, at *7 (N.D.N.Y. Oct. 24, 2005) (citing *Grover v. Town of Montour*, 252 A.D.2d 859, 860 (N.Y. App. Div. 1998)).  In this case, however, there is no evidence in the record that Sanchez could have reasonably foreseen that by paying Rascón in cash, it would expose Vista to theft-related damages.  *See Freund*, 34 N.Y.2d at 382 ("It is axiomatic that . . . the law awards damages for breach of contract to compensate for injury caused by the breach—injury which was foreseeable, i.e., reasonably within the contemplation of the parties, at the time the contract was entered into.").  To the contrary, there is no dispute that Rascón was the Vista salesman responsible for selling products to Sanchez throughout the course of the parties' business relationship, First Butterfass Decl. ¶ 8, and no indication that Sanchez was aware, until much later, of the other instance of Rascón's "admitted theft" involving a different Vista customer.

Because no reasonable jury could find that Sanchez's breach was the proximate cause of Vista's injury—as opposed to the unforeseeable and illegal act of a third party, Rascón—Sanchez is entitled to summary judgment on the breach of contract claim.[7]

### B.  Breach of Implied and Quasi-Contract

Vista's claims for breach of implied contract, promissory estoppel, and unjust enrichment also fail.  In this case, an express agreement governed the parties' conduct, and neither party contends that the contract is not valid and enforceable.  As a result, Vista is precluded from seeking quasi-contractual recovery for events arising out of the same subject matter as its breach of contract claim.  *See Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as . . . unjust enrichment, implied and quasi contract, and quantum meruit, are generally precluded, unless based on a duty independent of the contract."); *Adams v. Labaton, Sucharow & Rudoff LLP*, No. 07 Civ. 7017, 2009 WL 928143, at *7 (S.D.N.Y. Mar. 20, 2009) ("Plaintiff's remaining claims of promissory estoppel, unjust enrichment, and quantum meruit cannot be maintained alongside a properly asserted breach of contract claim as a matter of law. 'The existence of a valid contract will generally preclude quasi-contract claims.'  As such, these claims may only proceed should the Court find that no valid contract exists.") (quoting *Stillman v. Townsend*, No. 05 Civ. 6612, 2006 WL 2067035, at *6 (S.D.N.Y. July 26, 2006)); *International CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 487 (S.D.N.Y. Sept.

---

[7] Vista's argument that Sanchez has waived this "affirmative defense" by failing to assert it in its answer is unpersuasive.  As Sanchez rightly notes, "a plaintiff may recover only for damages that are 'directly and proximately' caused by a defendant's breach of contract . . . [and] causation is an element—and a crucial one—of the plaintiff's *prima facie* case.  *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526 (2d Cir. 2004) (citing *Wakeman*, 101 N.Y. at 209).  Thus, "intervening cause [is] not an affirmative defense that [a defendant] ha[s] to plead."  *Id.* at 527 (citing cases).

19, 1997) ("A valid contract governing a particular matter precludes a recovery in quasi-contract for events arising out of the same subject matter.").

## CONCLUSION

For the foregoing reasons, the Court grants Sanchez's motion for summary judgment and denies Vista's motion for summary judgment.  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 88, 95, and 107 and close this case.

SO ORDERED.

Dated: September 13, 2022
      New York, New York

_____
Hon. Ronnie Abrams
United States District Judge