UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VISTA FOOD EXCHANGE, INC.,

Plaintiff,

v.

COMERCIAL DE ALIMENTOS SANCHEZ S DE R L DE
C.V. d/b/a COMERCIAL SANCHEZ,

Defendant.

CIVIL ACTION NO.: 18 Civ. 8999 (RA) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.<u>INTRODUCTION</u>

Before the Court in this breach of contract action arising out the alleged failure to pay for over $750,000 worth of meat products, Plaintiff Vista Food Exchange, Inc. ("Vista") seeks to compel two additional depositions of witnesses for Defendant Comercial De Alimentos Sanchez S De R L De C.V. d/b/a Comercial Sanchez ("Sanchez"). (Dkt. No. 180 (the "Motion")). The two proposed deponents are Humberto Sanchez Hernandez ("Humberto"), an owner of Sanchez who submitted a declaration concerning Sanchez's production of documents (Dkt. No. 157-4 (the "Third Humberto Declaration")), and Khody R. Detwiler ("Mr. Detwiler"), a forensic document examiner whom Sanchez retained as a consulting expert and who submitted a declaration concerning the authenticity of certain documents Sanchez produced (Dkt. No. 157-6 (the "Detwiler Declaration")). In connection with the depositions, Vista also asks that Sanchez produce: (1) originals of documents Sanchez made available for inspection and copying; (2) Mr. Detwiler's work product; and (3) native accounting files. (Dkt. No. 180 at 1). Sanchez opposes the Motion, but asks that, if it is granted, then <u>quid pro quo</u>, Sanchez be permitted to depose two Vista witnesses, Alan Butterfass and Gerald LaPorte, and Vista be required to produce additional financial records. (Dkt. No. 183 at 3).

1

For the reasons set forth below, the Motion is DENIED.

## II.BACKGROUND

We presume the reader's familiarity with the factual and procedural background of this action set forth in the September 13, 2022 decision of the Honorable Ronnie Abrams granting Sanchez's motion for summary judgment and the Second Circuit's July 24, 2025 decision affirming in part, reversing in part, and remanding the action.  See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V., 627 F. Supp. 3d 408, 412–14 (S.D.N.Y. 2022) ("Vista I"), aff'd in part, rev'd in part, 147 F.4th 73, 78–88 (2d Cir. 2025) ("Vista II").  We set forth only the additional background necessary to resolve the Motion.

### A.  Initial and Post-Remand Discovery

Pursuant to an amended case management plan, the deadline for all fact discovery was December 15, 2020, and the parties certified that they completed all discovery by the end of April 2021,[1] following which they moved for summary judgment.  (Dkt. Nos. 61; 80; 81; 88; 95).  In Vista I, the Honorable Ronnie Abrams granted Sanchez's motion for summary judgment, in support of which Sanchez had submitted two declarations from Humberto (Dkt. Nos. 92; 113), and denied Vista's motion for summary judgment.  627 F. Supp. 3d at 422.

In Vista II, the Second Circuit vacated the grant of summary judgment for Sanchez and remanded Vista's breach of contract and unjust enrichment claims "for trial."  147 F.4th at 103. Following remand, Vista requested a "limited" reopening of fact discovery.  (Dkt. No. 120).  The Court did not formally grant Vista's request but conducted four conferences with the parties and

---

[1] The docket does not indicate whether Vista ever noticed or took Humberto's deposition during fact discovery.

narrowed the scope of additional searches and productions that Sanchez was to perform.  (Dkt. Nos. 121; 131–33; 140–50; 152; 153; 157; 158; 160; 164; 176; minute entries dated Sept. 11, 2025, Oct. 6, 2025, Feb. 25, 2026, Apr. 13, 2026).  In particular, following a conference on September 11, 2025, the Court directed Sanchez to conduct a reasonable search for: (1) the native version of the 61-page compendium of exhibits, which included approximately 32 invoices (the "Invoices") and portions of a spreadsheet (the "Copia Spreadsheet")[2] that Sanchez submitted in support of its summary judgment motion (Dkt. No. 90-2 (the "Compendium"); (2) the original version of the affidavit of Eduardo Andujo Rascón (Dkt. Nos. 90-3 (the "Rascón Affidavit")); (3) the Spanish version of Humberto's September 3, 2021 declaration (Dkt. No. 92 (the "First Humberto Declaration")); (4) the native version of the Copia Spreadsheet; (5) the original versions of the Invoices listed in the Rascón Affidavit; (6) Sanchez's internal cash requests relating to payments to Vista in 2014; and (7) Sanchez's accounting data or ledger relating to Vista for 2013, 2014, and 2015.  (Dkt. No. 131 (the "Sept. 11 Order")).

Since remand, Vista has repeatedly complained that Sanchez has failed to fulfill its discovery obligations, has failed to provide a complete set of documents for inspection by Gerald LaPorte (Vista's forensic document expert), and has produced falsified documents.  (See, e.g., Dkt. Nos. 120; 152).  After performing an in-person inspection of Sanchez's documents in November 2025, Mr. LaPorte attested that he was unable to authenticate three categories of documents that Sanchez submitted in support of its summary judgment motion: (1) the Rascón Affidavit; (2) the Compendium (Dkt. No. 90-2); and (3) documents referenced in the declaration

---

[2] On May 14, 2015, Humberto sent to Vista the Copia Spreadsheet, which "showed Sanchez's internal accounting of the $750,842.00 it claims to have paid in cash to [Eduardo Andujo] Rascón[,]" Vista's sales representative who apparently stole the cash and passed away in 2016.  Vista I, 627 F. Supp. 3d at 414.

of Omar Torres Sortillion (Dkt. No. 94 (the "Sortillon Exhibits", with the Rascón Affidavit and the Compendium, the "Inspection Documents")).    (Dkt. No. 152-1 at 18–27 (the "LaPorte Declaration")).  Based on the LaPorte Declaration, Vista asserted that Sanchez "presented a false narrative on summary judgment," threatened to seek case-terminating sanctions, sought additional discovery from Vista, and requested to amend its complaint.[3]  (Dkt. No. 152; see Dkt. No. 176).

Sanchez insists that it fulfilled its discovery obligations, provided for Mr. LaPorte's inspection all available native and original versions of invoices, customs filings, and accounting records, and did not fabricate or alter any documents.  (See Dkt. Nos. 157 ; 176 at 19–27).  To counter the LaPorte Declaration, Sanchez submitted (1) the Third Humberto Declaration, in which he attests to efforts to search for additional documents concerning the products Sanchez purchased from Vista (Dkt. No. 157-4),[4] and (2) the Detwiler Declaration, in which Mr. Detwiler

---

[3] On March 14, 2026, Vista filed a motion for leave to file a second amended complaint, which Sanchez has opposed and which the Court will address in a separate opinion and order.  (Dkt. Nos. 166 (the "MTA"); 178; 182).

[4] Humberto attests that Sanchez: (1) searched for and produced 94 pages of documents "related to work performed by Mr. Sortillon on behalf of Sanchez for products purchased from Vista"; (2) has not located any "Vista invoices" sent to or received by Mr. Sortillon; (3) Sanchez searched for and located 18 import-export ("SADER") certificates; (4) searched for and produced for inspection documents, including invoices Sanchez received from Vista, related to purchases by Sanchez from Vista in 2014; (5) searched for and located original hard copies for all but one of the pages in the Compendium; (6) searched for and produced the native version of the Copia Spreadsheet; and (7) searched for but did not locate native versions of eleven (11) additional spreadsheets Vista identified.  (Dkt. No. 157-4 ¶¶ 4–10, 15–17).  Humberto also corrected a prior statement that Sanchez paid two of the Invoices—Nos. 3416349 and 3416394—by wire transfer; in fact, Sanchez paid those two invoices in cash to Mr. Rascón.  (Id. ¶ 12; see Dkt. No. 152-1 at 131, 138).

describes his examination of the Inspection Documents and disputes Mr. LaPorte's opinions about the inauthenticity of those documents.  (Dkt. No. 157-6).[5]

### B.  The Motion

On April 10, 2026, Vista filed the Motion, seeking to depose Humberto and Mr. Detwiler and asking the Court to order Sanchez to re-produce (1) the Inspection Documents, (2) Mr. Detwiler's "work product file," and the "accounting" that Sanchez produced to Vista in May 2015. (Dkt. No. 180 at 1).  As to Humberto, Vista argues that the Third Humberto Declaration puts "the adequacy and scope of Sanchez's search squarely at issue[,]" and seeks to question him about the Copia Spreadsheet, the absence of "pen and ink" originals of the Invoices, and other correspondence that Sanchez has produced.  (Id. at 2).  As to Mr. Detwiler, Vista argues that due to "the expansive content in his 36 page declaration and its use by Sanchez to advance merits based arguments," Sanchez has waived any protection available under Federal Rule of Civil Procedure 26(b)(4)(D).  (Id.)  Vista does not elaborate on why Sanchez should be required to reproduce the Inspection Documents.  (Id.)

In opposition to the Motion, Sanchez points out that discovery closed on April 28, 2021 and has never been officially re-opened, and asks the Court to cease Vista's "never-ending one-sided inquisition of Sanchez."  (Dkt. No. 183 at 1).  As to Humberto, Sanchez points out that it produced the Copia Spreadsheet in 2015, and at the Court's instruction, recently produced a native version and has not located any other native accounting files.  (Id. at 2; see Dkt. No. 157 at 5).  As to Vista's contention that the Copia Spreadsheet incorrectly identified two of the

---

[5] Sanchez submitted a third declaration, by Leopoldo Ruiz, an accountant and corporate advisor in Mexico, regarding the Invoices.  (Dkt. No. 157-5).  Vista has not sought to take Mr. Ruiz's deposition.  (See Dkt No. 180).

payments as being paid by wire instead of cash, Sanchez points out that "Vista has always claimed that none of the 39 Invoices were paid[,]" so "there is no new evidence that warrants" reopening discovery for Humberto's deposition. (Dkt. No. 183 at 2). If the Court were to order Humberto's deposition, Sanchez asks that he be able to appear from Tijuana, where Sanchez is headquartered, and that the deposition occur remotely and with an interpreter. (Id.) As to Mr. Detwiler, Sanchez contends that his declaration is a rebuttal to the LaPorte Declaration, and both declarations "simply address Sanchez's compliance with its obligation to produce originals and natives" pursuant to the Court's orders and do not address the core issue in this case—whether Sanchez owes Vista for meat products. (Id. at 3; see Dkt. No. 133). Finally, Sanchez asks, if the Court grants the Motion, that Vista also "be ordered to produce its financial records journalling Sanchez's payment or nonpayment for product[]" and to produce Mr. LaPorte and Mr. Butterfass for depositions. (Dkt. No. 183 at 3; see Dkt. No. 176 at 23 (arguing that, if discovery is re-opened, "it should be equal two-way in terms of [the] number of depositions [and] number of documents [a party] can request.")).

### III. DISCUSSION

#### A. Humberto

##### 1. Legal Standard

Under Federal Rule of Civil Procedure 16(b), a district court may modify a discovery schedule "for good cause[,]" Fed. R. Civ. P. 16(b), which the party seeking to conduct discovery past the deadline has the burden to establish. Ruderman v. Law Office of Yuriy Prakhin, P.C., No. 19 Civ. 2987 (RJD), 2021 WL 11690898, at *2 (E.D.N.Y. Apr. 16, 2021). In determining good cause, some courts consider six specific factors: "(1) whether trial is imminent, (2) whether the request

is opposed, (3) whether the nonmoving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence." Bakalar v. Vavra, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).

Consideration of those factors is not mandatory, however. See Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc., 335 F.R.D. 50, 52 (S.D.N.Y. 2020). The crux of the analysis is whether the party seeking to reopen discovery demonstrated "why the court's deadlines could not reasonably have been made despite [the party's] diligence." Castillio v. ELG Parking Inc., No. 21 Civ. 2550 (AT) (KHP), 2023 WL 9491724, at *1 (S.D.N.Y. Apr. 4, 2023). Discovery will not be reopened "where a party has faced no impediment in conducting a deposition before the close of discovery." Ahmed v. City of New York, No. 22 Civ. 8007 (JHR) (JW), 2024 WL 2884039, at *2 (S.D.N.Y. May 23, 2024).

### 2. Application

We find that Vista has failed to demonstrate good cause for reopening fact discovery to permit Humberto's deposition. First, Vista claims to need to understand the "adequacy and scope of Sanchez's search" for "relevant native or original records," about which Vista says Humberto "provides no details." (Dkt. No. 180 at 2). A review of the Third Humberto Declaration demonstrates the falsity of Vista's statement: Humberto in fact discusses the seven (7) different categories of documents for which Vista searched pursuant the Sept. 11 Order, the results of those searches, and attests as to the completeness of Sanchez's production in compliance with

7

that Order.  (Dkt. No. 157-4).  Vista fails to persuade us that any further questioning of Humberto would elucidate the production of any additional documents that Vista claims not to have.

Second, Vista fails to explain why it was unable to take Humberto's deposition and question him about the scope of its document searches before fact discovery closed in 2021. (See Dkt. Nos. 61; 77; 80; 81).  While the Third Humberto Declaration was not submitted until after remand in 2025, Vista appears not to have sought Humberto's deposition during fact discovery, nor has it shown that taking his deposition during fact discovery would have been a hardship.  Furthermore, the parties themselves represented in April 2021 that they had completed fact discovery, from which we drew the reasonable inference that there were no outstanding depositions.  Vista's failure "to explain why [it] was unable to obtain this deposition before discovery closed" weighs against permitting Vista to take it now, at this late stage.  See Harleysville Preferred Ins. Co. v. Van Dyke, No. 23 Civ. 6183 (NSR) (VR), 2024 WL 5154078, at *2 (S.D.N.Y. Dec. 18, 2024) (denying request to reopen discovery to take deposition that could have been taken before discovery closed).

Finally, the remaining Bakalar factors set forth above weigh against reopening discovery for Humberto's deposition.  Although Judge Abrams has not yet set a trial date and Humberto's testimony could be relevant, the Second Circuit remanded the action "for trial"—signaling that no further discovery was contemplated and trial should occur as soon as possible.  Vista II, 147 F.4th at 103.  Sanchez opposes reopening discovery and would be prejudiced by the delay and expense of producing Humberto, who works and resides in Mexico and speaks Spanish, for a deposition, even if it were virtual.  (Dkt. No. 183 at 2).

8

Accordingly, Vista has failed to demonstrate good cause to reopen discovery to take Humberto's deposition.

**B.  Mr. Detwiler**

### 1.  Legal Standard

"Federal Rule of Civil Procedure 26(b)(4)(D) protects from disclosure information from non-testifying, consulting experts[.]"  <u>Dover v. British Airways, PLC (UK)</u>, No. 12 Civ. 5567 (RJD) (MDG), 2014 WL 5090021, at *1 (E.D.N.Y. Oct. 9, 2014); <u>see</u> <u>Clark v. Quiros</u>, No. 19 Civ. 575 (VLB), 2022 WL 3716355, at *3 (D. Conn. Aug. 29, 2022) ("A non-testifying consulting witness is generally immune from discovery.").  Rule 26(b)(4)(D) states:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.  But a party may do so only:
> (i)      as provided in Rule 35(b); or
> (ii)     on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).[6]  In addition, Federal Rule of Civil Procedure 26(b)(4)(B) protects as work product a consulting expert's drafts or other disclosures that would otherwise be required for production under Federal Rule of Civil Procedure 26(a)(2).  Fed. R. Civ. P. 26(b)(4)(B); <u>see</u> <u>Williams v. Bridgeport Music, Inc.</u>, 300 F.R.D. 120, 122 (S.D.N.Y. 2014) (discussing Rules 26(b)(4)(B) and (b)(4)(D)).

Notwithstanding these provisions, "[a] party's assertion of claims or defenses putting otherwise protected work product 'at issue' can result in the involuntary forfeiture of that

---

[6] Federal Rule of Civil Procedure 35(b) governs physical and mental examinations where a party's mental or physical condition is in controversy, which is not the case here.

protection." Dover, 2014 WL 5090021, at *1 (quoting John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003)). To find a waiver of the work product protection, the party arguing for waiver must make "'some showing . . . that the opposing party relies on the privileged communication' or document, and that by putting that privileged document at issue, unfairness results." Id. (quoting In re Cnty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008)).

### 2. Application

Vista does not dispute that Mr. Detwiler is a consulting expert protected by Rule 26(b)(4)(D) and instead argues that Sanchez has waived the Rule's protection by relying on the Detwiler Declaration for "substantive merits positions on two pending matters: asserted compliance with the Court-ordered inspection and opposition to" the MTA. (Dkt. No. 180 at 2).[7] Vista contends that Mr. Detwiler's opinions are not "limited to responding to Mr. LaPorte's forensic opinions" and "extend[] well beyond forensic methodology." (Id.) Sanchez counters that both the LaPorte Declaration and the Detwiler Declaration "simply address Sanchez's compliance with its obligation to produce originals and natives" pursuant to the Sept. 11 Order. (Dkt. No. 183 at 3). Sanchez points out that neither Declaration addresses the merits issue in this action — "whether or not Sanchez owes Vista money for products" — and notes that Vista's failure to designate Mr. LaPorte as an expert during discovery demonstrates that neither expert is intended to be a trial witness. (Id.)

In his Declaration, Mr. Detwiler attests that Sanchez retained him "to inspect and test certain documents" in Sanchez's possession and that his opinions "are limited to matters raised

---

[7] Vista does not even attempt to show that the "exceptional circumstances" contemplated by Rule 26(b)(4)(D) exist. (See Dkt. No. 180).

in" the LaPorte Declaration. (Dkt. No. 157-6 ¶¶ 2–3). Mr. Detwiler's opinions are, in fact, limited to responding to Mr. LaPorte's opinions about the Inspection Documents. (See id. ¶¶ 10–57). Mr. Detwiler does not offer any opinion as to the substantive issue of whether Sanchez in fact paid Vista for the Invoices. (See generally id.) Furthermore, contrary to Vista's assertions, Sanchez has not invoked the Detwiler Declaration in its opposition to the MTA. (See Dkt. No. 178). Vista has therefore failed to establish that Sanchez has waived the work product protection in Rule 26(b)(4)(D). See Dover, 2014 WL 5090021, at *2.

In addition, Vista misplaces its reliance on United States v. Hooker Chemicals & Plastics Corp., 112 F.R.D. 333 (W.D.N.Y. 1986), which was decided long before the 2010 amendments to Rule 26(b)(4). Under the version of Rule 26(b)(4) when Hooker was decided, the court permitted the expert to be deposed because his testimony was "important to the case[,]" id. at 341, which is no longer the standard under Rule 26(b)(4)(D). See Dover, 2014 WL 5090021, at *1. Vista is similarly off-base in relying on a non-Second Circuit case that also pre-dates the current Rule 26(b)(4). (Dkt. No. 180 at 3 (citing Sims v. Metro. Life Ins. Co., No. 05 Civ. 2980 (TEH) (EDL), 2006 WL 3826716, at *2–3 (N.D. Cal. Dec. 27, 2006)).

Accordingly, Vista has failed to demonstrate that Sanchez has waived the protections in Rule 26(b)(4)(D) with respect to the Detwiler Declaration or that "exceptional circumstances" exist warranting Mr. Detwiler's deposition. Vista is therefore not entitled to depose Mr. Detwiler, who, at least as of now, Sanchez has offered solely a consulting expert on non-merits issues, as contemplated by Rule 26(b)(4)(D). See Flemming v. C.R. Bard., Inc., No. 19 Civ. 1400 (VLB), 2021 WL 430048, at *4 (D. Conn. Feb. 8, 2021) (declining to permit deposition of consulting expert).

## IV.CONCLUSION

For the reasons set forth above, Vista's motion to take the depositions of Humberto and Mr. Detwiler—and the corresponding request that they be required to bring certain documents to their depositions—is DENIED.  By **Thursday, May 7, 2026,** the parties shall file a joint status letter regarding the three points raised in the Court's February 25, 2026 Post-Conference Order. (See Dkt. Nos. 165; 181).  The Clerk of the Court is respectfully directed to close Dkt. No. 180.

Dated:        New York, New York
              April 23, 2026

                                        SO ORDERED.

                                        SARAH L. CAVE
                                        United States Magistrate Judge

12